# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Labor Ready Northeast, Inc. and    :
ESIS,    :
          Petitioners   :
    :
    v.    :  No. 486 C.D. 2017
    :  Submitted: October 20, 2017
Workers' Compensation Appeal    :
Board (Lasky),    :
          Respondent   :

BEFORE:   HONORABLE ROBERT SIMPSON, Judge
           HONORABLE ANNE E. COVEY, Judge
           HONORABLE JAMES GARDNER COLINS, Senior Judge

OPINION NOT REPORTED

**MEMORANDUM OPINION**
**BY JUDGE SIMPSON**        **FILED: February 22, 2018**

Labor Ready Northeast, Inc., and ESIS, its workers' compensation insurance carrier, (collectively, Employer) petition for review of an order of the Workers' Compensation Appeal Board (Board) that affirmed a Workers' Compensation Judge's (WCJ) order granting Robert Lasky's (Claimant) claim petition for total disability and specific loss benefits. On appeal here, Employer contends the WCJ erred or abused his discretion by capriciously disregarding competent medical evidence that Claimant's condition, diagnosed as a hypoxia (lack of oxygen) induced involuntary movement disorder, was instead psychogenic (arising from mental or emotional stress, or psychological or psychiatric disorders) in nature. Employer asserts the WCJ further erred by failing to admit into evidence an investigation report prepared by the Occupational Safety and Health

Administration (OSHA); and, by failing to issue a reasoned decision as required by Section 422(a) of the Workers' Compensation Act[1] (Act).  Upon review, we affirm.

## I. Background

Claimant filed a claim petition alleging he sustained compensable injuries during the course of his employment with Employer following his exposure to toxic chemicals on April 20, 2013.  Claimant sought partial disability benefits for the first two days following his exposure and then ongoing total disability benefits beginning April 22, 2013.  Employer filed a timely answer denying Claimant's material allegations.  Before the WCJ, Claimant amended his petition to include a claim for specific loss of the left arm and facial disfigurement.  In response, Employer amended its answer to include a denial of Claimant's added allegations.

Initially, the WCJ noted Employer is a temporary employment agency that supplied Claimant's services as a laborer to a company identified as "Insituform."  WCJ's Op., 3/24/16, Finding of Fact (F.F.) No. 6.  Claimant began working for Insituform in January 2013.

The WCJ summarized Claimant's testimony as follows.  On April 20, 2013, Insituform directed Claimant to enter a cylindrical tube to install a "turn-rope." F.F. No. 7a.  Claimant explained that the turn-rope process required him to crawl 18 feet into the tube, attach the turn-rope, crawl an additional 3 feet and again attach the turn-rope at the 21-foot mark.  Id.  Claimant described the tube as inflated by a fan to a diameter of approximately 37 inches.  Id.

---

[1] Act of June 2, 1915, P.L. 736, as amended, 77 P.S. §834.

When Claimant was inside the tube attaching the rope, the fan became disconnected or stopped working, and the tube collapsed. F.F. No. 7b. Claimant testified that once the tube collapsed, there was no longer any air in the tube, and he was breathing chemical fumes. Id. Claimant estimated he remained in the collapsed tube for up to two minutes without fresh air. Claimant believed he then lost consciousness. Id. Thereafter, Employer pulled Claimant from the tube using safety ropes attached to his ankles. Id. After Claimant regained consciousness, Employer's line leader directed Claimant to fix his clothing and go to the breakroom for the rest of the day. Id. The incident occurred about one hour before the end of Claimant's shift. Id.

Following the Saturday incident, Claimant attempted to submit an injury report to Insituform. F.F. No. 7c. However, Insituform directed Claimant to report the injury to Employer. Id. When Claimant contacted Employer, he was told to call back on Monday and speak to Mary, the office manager. Id. Claimant made multiple attempts to call Mary on Monday, but failed to reach her. Id.

On Monday afternoon, after receiving no response from Employer, Claimant sought emergency room treatment at Mercy Hospital in Scranton for symptoms of dizziness, nausea, headaches, shaking and slurred speech. F.F. No. 7d. Also, Claimant described a blackout lasting more than two hours Monday morning. Id. Claimant denied having any of these symptoms prior to the Saturday work incident. Id.

3

Thereafter, Claimant sought emergency room treatment at the Geisinger Community Medical Center, also in Scranton. F.F. No. 7e. There, Claimant treated with Dr. Iqbal Khan, a neurologist. Id. At Dr. Khan's direction, Claimant also began treating with Dr. Michael Fox. Id. Eventually, Dr. Fox referred Claimant to Dr. Douglas Nathanson, also a neurologist. Id. At that time, Claimant stopped treating with Dr. Khan. Id.

Claimant further described ongoing symptoms, including an inability to breathe normally, tremors, cramps, involuntary movements of his head and mouth, facial twitching, loss of balance, nausea, headaches, vision problems, vomiting, and inability to control his left arm and hand. F.F. No. 7g.

On cross-examination, Claimant described his symptoms as "progressively worsening." F.F. No. 7h. Claimant also specifically denied that Employer made available to him any air mask, independent breathing equipment, safety glasses, lights, or a secondary air source when he entered the tube on April 20, 2013. Id.

Claimant also submitted the deposition testimony of his treating physician, Dr. Lee T. Besen (Claimant's Physician), who is board certified in family medicine and emergency medicine. F.F. No. 8. Claimant's Physician has more than 30 years of experience in treating patients with brain injuries from various causes, including, hypoxia, strokes and head trauma. Id.

Claimant's Physician first examined Claimant in late January 2014. F.F No. 8a. Claimant provided a history of the work incident. More specifically, Claimant stated he suffered exposure to chemical vapors while trapped inside a collapsed tube. Id. Claimant further indicated he lost consciousness for approximately one-and-a-half to two minutes. Id. Claimant's Physician's physical examination revealed Claimant suffered from involuntary movement of his facial muscles, snorting, drooling and contortions. Id.

Claimant's Physician described Claimant as having difficulty speaking. F.F. No. 8b. The doctor observed that Claimant had dysarthric speech and continual movement of his entire left side, face, trunk and arms, which is called "choreiform-type movement" of his entire left side. Id. The doctor further explained that Claimant suffered from an ataxic or unstable gait subject to involuntary and jerky movements and repeated falls. Id. Claimant's symptoms remained consistent from the time of his initial disability examination continuing through Claimant's Physician's examinations. Id.

Claimant's Physician also reviewed Claimant's April 22, 2013 hospital records, which included a chest X-ray and CAT scan following chemical inhalation, loss of consciousness and speech. F.F. No. 8c. Four days later, Claimant underwent additional emergency treatment for stuttering and imbalance, which developed after his chemical exposure in the tube. Id. Claimant's Physician also reviewed medical records from Dr. Khan, the neurologist who provided Claimant with follow-up care after his emergency room visit. Id. Dr. Khan diagnosed Claimant's condition as "sustained hypoxic ischemic and anoxic brain injury." Id. Claimant's Physician

described Dr. Khan's diagnosis as "consistent with his own diagnosis of Claimant's condition." Id.

Based upon his multiple examinations, and his review of Claimant's history and medical records, Claimant's Physician diagnosed Claimant as suffering from "hypoxia induced movement disorder; namely choreiform movement, which is involuntary about his mouth, upper and lower extremities on the left, on his non-dominant side." F.F. No. 8d. The doctor causally related Claimant's condition to the April 20, 2013 work incident when the tube collapsed on Claimant. Id. Claimant's Physician further testified that Claimant failed to show any improvement during his treatment. Id. Therefore, the doctor opined, as a result of a hypoxia induced movement disorder, Claimant remained unable to perform gainful employment. Claimant's Physician further opined that as a result of the brain injury Claimant sustained on April 20, 2013, his left upper extremity is dysfunctional. Id.

In opposition to Claimant's claims, Employer submitted the deposition testimony of Kyle Rossetti (Coworker Rossetti), an Insituform employee who worked with Claimant on the third shift. F.F. No. 9. On April 20, 2013, Coworker Rossetti trained with Claimant and "Big Jim," the line leader and another coworker, Anthony Aguilera. Id.

Coworker Rossetti testified that when going into the tube to perform the turn-rope procedure, an employee wears normal work clothes, which include safety glasses, long pants and safety shoes. Id. Rossetti further testified employees entering the tube wore leg shackles for emergency extraction. Id. He also described

6

an air fan, which he described as an "industrial sized steel box fan," which inflated the tube or "bag." Id.

Coworker Rossetti did not recall Claimant going into the tube without the safety equipment. Id. In addition, Rossetti did not recall anything unusual that happened while he worked with Claimant on April 19 and 20, 2013. Id. However, Rossetti admitted his uncertainty as to whether he actually worked the third shift (10:00 P.M to 6:00 A.M.), or a double shift (10:00 P.M. to 2:00 P.M. the following day), or if he was on the first shift (6:00 A.M. to 2:00 P.M.) at the time of the incident. Id. Nonetheless, Rossetti testified being inside similar tubes and being able to breathe without an air hose. Id.

Employer also presented the testimony of Insituform's Claim Manager, David Mark Jones (Claim Manager). F.F. No. 10. Claim Manager's job duties include knowledge of everything that goes on in the plant, from financial budgeting to dealing with regulatory agencies such as OSHA. Id. Claim Manager recalled that Claimant began working at Insituform in January 2013 as a temporary employee provided by Employer. Claim Manager testified he would have been notified of Claimant being caught in a collapsed tube. F.F. No. 10b. However, nobody informed Claim Manager of such an event occurring on April 19, 2013. Id. Nonetheless, Claimant Manager admitted that an invoice from Employer indicated that Claimant worked on April 20, 21 and 22, 2013. Id.

Claim Manager acknowledged speaking with Claimant on April 22, 2013. F.F. No. 10c. However, he denied that Claimant mentioned any work injury.

7

Id. Claim Manager acknowledged that after talking to Claimant, he called Employer and terminated Claimant's services. Id.

Claim Manager also acknowledged he called the local police to stop Claimant from making threatening and harassing phone calls to Insituform. F.F. No. 10d. However, Claim Manager denied contacting the police in retaliation for Claimant's report of a work injury. Id. After that, Claimant stopped calling Insituform. Id. Thereafter, Insituform began receiving OSHA complaints. Id.

Employer submitted the deposition testimony of Dr. Richard Bennett (IME Physician), a physician board certified in neurology and electromyography. F.F. No. 11. IME Physician performed an independent medical evaluation of Claimant in November 2013. He took Claimant's history. Id. Although Claimant indicated he suffered exposure to and inhalation of chemicals while inside a tube, he did not report a loss of consciousness. Id. In addition, the records the doctor reviewed did not indicate Claimant suffered a loss of consciousness. Id.

IME Physician testified Claimant's movement disorder did not fit any pattern. Id. Ultimately, IME Physician opined that the circumstances surrounding the work incident described by Claimant were not indicative of Claimant suffering a hypoxic brain injury. Id. Rather, IME Physician proffered, Claimant's symptoms might be related to "hysterical paralysis." Id.

On cross-examination, IME Physician acknowledged that Claimant could not use his left hand or arm at the time of his examination. F.F. No. 12. The

8

doctor also admitted that he was unaware of Claimant's condition prior to the date of his injury. Id. Nevertheless, IME Physician testified that Claimant could be malingering or have a serious psychological problem with an emotional component such as post-traumatic stress disorder (PTSD). Id.

Employer also submitted other items into evidence, including a DVD of the turn-rope process; a report of workers' exposure to styrene during normal production activities; a temporary worker safety-training checklist signed by Claimant; a photo of safety equipment; and, a sample of the tubing material. F.F. Nos. 13-17.

In addition, Employer offered into evidence Claimant's pay stubs and work record. F.F. No. 18. Claimant's work record showed he worked at Insituform every day from April 3, 2013 through April 22, 2013. Id. In particular, Claimant worked eight hours each day from April 11, 2013 through April 22, 2013. Id.

Based on his observations of Claimant and his demeanor during the proceedings, the WCJ found Claimant's testimony more credible and persuasive than the deposition testimony of Coworker Rossetti regarding the work incident. F.F. No. 20. The WCJ recognized a discrepancy between Coworker Rossetti's testimony (that the tube was not inflated during training) and Claimant's credible testimony (that he was inside an inflated tube when it collapsed on him). Id. The WCJ also noted Coworker Rossetti's admitted uncertainty as to how many shifts, or even what shift, he worked the day of the incident. Id.

9

The WCJ found Claim Manager credible as to the proper method to perform the turn-rope process and the safety precautions that are in place. F.F. No. 21. The WCJ also found credible Claim Manager's testimony that he was unaware of any tubing collapse or injuries to Claimant on April 19, 2013. The WCJ noted this is not inconsistent with Claimant's credible testimony that the tube collapse occurred on April 20, 2013. Id.

With regard to the medical evidence, the WCJ deemed the testimony and opinions of Claimant's Physician credible and persuasive. F.F. No. 22. Therefore, he accepted them as fact. Id. Where Claimant's Physician's testimony and opinions conflicted with those of IME Physician, the WCJ accepted Claimant's Physician's testimony as more persuasive than that of IME Physician, who examined Claimant on only one occasion. Id.

As found by Claimant's Physician, Claimant suffers from a hypoxia induced movement disorder affecting his face, mouth, and extremities on his left side causally related to the events of April 20, 2013 when the tube collapsed on Claimant. Id. The doctor further opined that Claimant's condition left him unable to perform gainful employment and resulted in a dysfunctional left upper extremity. Id.

Consequently, based upon a review of the testimony and other evidence, the WCJ found Claimant sustained a compensable injury under the Act when a tube collapsed on him during the course of his employment with Insituform. F.F. No. 23. In support of this determination, the WCJ cited Claimant's credible

testimony that following the work incident, he began experiencing stuttering, imbalance, involuntary movements of his face, mouth, and left upper extremity. Id. Claimant did not have these symptoms prior to the work incident. Id.

In addition, the WCJ found that the medical experts agreed, and Claimant credibly testified, as to his inability to use his upper left extremity for all intents and purposes. F.F. No. 24. However, the WCJ did not find that Claimant suffered a serious, permanent, and unsightly disfigurement of the head, neck or face as a result of his work injury. Id.

In accord with his findings, the WCJ determined that Claimant met the burden of proof in his claim petition for an injury described as a movement disorder affecting Claimant's face, mouth and extremities on the left side. WCJ's Op., Conclusion of Law (C.L.) No. 1. The injury left Claimant unable to perform gainful employment, resulting in temporary partial disability from April 20-22, 2013, and total disability beginning April 23, 2013 and continuing into the future. Id.

The WCJ also determined Claimant satisfied his burden of proof for a specific loss claim for the use of his upper left extremity. C.L. No. 2. To that end, the WCJ awarded Claimant 410 weeks of disability with a potential healing period of 20 weeks. Id.

On appeal, the Board affirmed. Employer petitions for review.[2]

---

[2] Our review is limited to determining whether the WCJ's findings of fact were supported by substantial evidence, whether an error of law was committed or whether constitutional rights

11

## II. Discussion

### A. Capricious Disregard of Competent Evidence

### 1. Argument

Employer first contends the WCJ capriciously disregarded material evidence, which included an independent medical evaluation performed in April 2014 by Dr. Paul M. Shipkin. Employer asserts Dr. Shipkin's IME found that Claimant's condition was psychogenic (arising from mental or emotional stress, or psychological or psychiatric disorders) in nature and that this opinion fully exculpated Employer.

Employer further argues the WCJ capriciously disregarded the medical report of Dr. Douglas C. Nathanson, which corroborated IME Physician's opinion that Claimant's condition was not work-related. Employer also asserts the WCJ improperly disregarded testimony that Claimant worked two days after the incident without any difficulties.

In addition, Employer asserts that Claimant's Physician, in rendering his opinion, relied on information provided by Dr. Khan, a neurologist, who based his opinion on an inaccurate history provided by Claimant. Employer points out that Claimant's Physician admitted on cross-examination that Claimant told Dr. Khan that he developed severe involuntary movements, dizziness and vomiting the day after the work incident. This account differs from the emergency room records, which do not indicate Claimant suffered from such symptoms or had any movement

---

were violated. Phoenixville Hosp. v. Workers' Comp. Appeal Bd. (Shoap), 81 A.3d 830 (Pa. 2013).

problem with his left arm at that time. See Reproduced Record (R.R.) at 220a-26a. Claimant's Physician also admitted Dr. Khan relied on Claimant's history and did not review the hospital records. Id. at 226a. To that end, Claimant's Physician agreed that the history Dr. Khan relied upon was not accurate. Id. at 227a. Therefore, Employer argues Claimant's Physician's opinion relied upon incompetent medical evidence.

## 2. Analysis

The WCJ, as the ultimate fact-finder in workers' compensation cases, has exclusive province over questions of credibility and evidentiary weight. A & J Builders, Inc. v. Workers' Comp. Appeal Bd. (Verdi), 78 A.3d 1233 (Pa. Cmwlth. 2013). As such, the WCJ may accept or reject the testimony of a witness, including an expert witness, in whole or in part. Id.

Further, it is irrelevant whether the record contains evidence to support findings other than those made by the WCJ; the critical inquiry is whether there is evidence to support the findings actually made. Furnari v. Workers' Comp. Appeal Bd. (Temple Inland), 90 A.3d 53 (Pa. Cmwlth. 2014). We examine the record in its entirety to see if it contains evidence a reasonable person would find sufficient to support the WCJ's findings. Id. If the record contains such evidence, the WCJ's findings must be upheld. Id. In addition, we must view the evidence in the light most favorable to the prevailing party and give that party the benefit of all inferences reasonably deducible from the evidence. Id.

13

Moreover, a capricious disregard of the evidence occurs only when the WCJ deliberately or baselessly disregards apparently trustworthy evidence. Williams v. Workers' Comp. Appeal Bd. (USX Corp.-Fairless Works), 862 A.2d 137 (Pa. Cmwlth. 2004). Where there is substantial evidence to support a WCJ's findings, and those findings support the WCJ's legal conclusions, it should remain a rare instance in which an appellate court would disturb an adjudication based upon capricious disregard. Leon E. Wintermyer, Inc. v. Workers' Comp. Appeal Bd. (Marlowe), 812 A.2d 478 (Pa. 2002). Further, where the WCJ discusses the evidence in question, but rejects it as less credible or assigns it less evidentiary weight than other evidence, the WCJ's determination does not constitute a capricious disregard of that evidence. Reed v. Workers' Comp. Appeal Bd. (Allied Signal, Inc.), 114 A.3d 464 (Pa. Cmwlth. 2015).

### a. Dr. Shipkin's IME

Our review of the record indicates Dr. Shipkin's IME report is attached to IME Physician's deposition as Exhibit Bennet 7. See R.R. at 465a-74a. Dr. Shipkin examined Claimant on April 3, 2014, for a neurologic IME. Following his examination, Dr. Shipkin arrived at the following diagnosis (with emphasis added):

> The working neurologic diagnosis is profound movement disorder … beginning several days after 04/20/13 with negative MRI imaging early on (has not had a repeat study). The etiology for his clinical presentation is unclear although nonphysiologic features (memory, coordination, gait, etc.) make a psychogenic etiology high on our differential diagnostic list of considerations with an occult organic pathological process to be ruled out (toxic encephalopathic injury, ischemic brain insult, etc).
>
> If a psychogenic etiology is eventually determined to explain his clinical presentation this may be related to

14

psychological trauma at the time of his 04/20/13 incident causing a conversion reaction (unconscious, a form of post-traumatic stress disorder) or symptom magnification (conscious) for uncertain reasons.

[Claimant] does have a history of psychological issues dating back a number of years with an ex-girlfriend who lacerated his left arm with a knife as well as being a recovering alcoholic/substance abuser, etc.

At this point in time there seems to be a strong temporal association with his incident on 04/20/13. I would, however, reserve judgment at present pending a movement disorder expert opinion at a major university center.

[Claimant] does require psychiatric and neurologic care. More specifically, an opinion by a movement disorder expert at a major university center such as the University of Pennsylvania is strongly recommended where more sophisticated testing can be accomplished.

Based on his current status, he appears unable to maintain gainful employment and I would be happy to reassess this gentleman after the above noted evaluation.

R.R. at 473a.

Contrary to Employer's contention, Dr. Shipkin's IME does not exculpate Employer from liability. Rather, Dr. Shipkin stated the etiology or cause of Claimant's condition was "unclear." Id. (emphasis added). Although a psychogenic etiology was "high on the list," Dr. Shipkin noted that a toxic encephalopathic injury or ischemic brain insult had not been ruled out. Id. In particular, Dr. Shipkin stated that if a psychogenic etiology is eventually determined to explain his clinical presentation, Claimant's condition may be related to psychological trauma at the time of the April 20, 2013 incident. Id.

15

Medical testimony will be found unequivocal and thus capable of supporting a finding if the medical expert, after providing a foundation, testifies that he believes a certain condition or fact exists. Campbell v. Workers' Comp. Appeal Bd. (Pittsburgh Post-Gazette), 954 A.2d 726 (Pa. Cmwlth. 2008). However, medical testimony which is based on mere possibilities is equivocal and must be deemed incompetent. Id. As such, Dr. Shipkin's statement that the cause of Claimant's condition was unclear and that it may be related to psychological trauma must be considered equivocal as to causation. Id.

In addition, Dr. Shipkin's diagnosis is similar to that of IME Physician. Like Dr. Shipkin, IME Physician indicated that Claimant's movement disorder could have an emotional component like PTSD not caused by an injury to the brain, spinal cord or nerves. See R.R. at 398a-99a. The WCJ rejected this testimony to the extent it conflicted with Claimant's Physician's opinions, which described Claimant's condition as a hypoxia induced movement disorder causally related to the work incident. F.F. Nos. 8d, 22.

In sum, the WCJ accepted Claimant's Physician's opinion as more credible than Employer's medical evidence asserting that Claimant's movement disorder was psychogenic in nature. The WCJ, as fact-finder, is the sole arbiter of credibility in workers' compensation cases. A & J Builders. As such, the WCJ did not err by failing to make explicit findings as to Dr. Shipkin's similar report, which was attached to IME Physician's deposition. Moreover, as discussed above, Dr. Shipkin's report failed to offer an unequivocal opinion that Claimant's condition

16

was psychogenic in nature and not work-related. As such, Dr. Shipkin's opinion does not constitute competent evidence showing that Claimant suffered from a psychogenic condition. Campbell.

### b. Dr. Nathanson's Report

Employer further contends the WCJ erred by failing to consider Dr. Nathanson's report, attached to IME Physician's deposition as Exhibit Bennett 5. See R.R. at 272a-86a. Employer asserts Dr. Nathanson, a neurologist, opined that Claimant's movement disorder was not work related. We disagree.

Claimant's Physician was confronted with Dr. Nathanson's report. Our review of that report, and of Claimant's Physician's testimony about it, fails to reveal a clear opinion by Dr. Nathanson as to causation. See R.R. at 195a-96a; 229a-32a.

Regardless, the WCJ accepted Claimant's Physician's opinion that Claimant suffered from a hypoxia induced movement disorder caused by the work incident as more credible than Employer's contradictory medical evidence. F.F. No. 22. As noted, this determination falls within the exclusive province of the WCJ. A&J Builders. Therefore, we reject Employer's contention that the WCJ erred in failing to consider Dr. Nathanson's report.

### c. Dr. Khan's Report

Employer also contends that the WCJ erred by failing to find Dr. Khan's opinion incompetent because it was based on an inaccurate history provided

17

by Claimant regarding the date he began experiencing involuntary movements and other symptoms. Again, we disagree.

Claimant's Physician admitted on cross-examination that Claimant told Dr. Khan that he developed severe involuntary movements, dizziness and vomiting the day after the work incident. See R.R. at 220a-26a. Employer asserts this history differed from the emergency room records, which do not indicate that Claimant suffered from these symptoms or had any movement problem with his left arm immediately following the injury. Id. Claimant's Physician also admitted Dr. Khan relied on Claimant's history and did not review the hospital records. Id. at 226a.

Nevertheless, Claimant's Physician never recanted his opinion, and he never indicated that he relied solely on Dr. Khan's report in reaching his determination that Claimant's condition is work-related. A medical expert's opinion is not rendered incompetent unless it is based solely upon inaccurate or false information. Newcomer v. Workmen's Comp. Appeal Bd. (Ward Trucking Corp.), 692 A.2d 1062 (Pa. 1997); Calex, Inc. v. Workers' Comp. Appeal Bd. (Vantaggi), 968 A.2d 822 (Pa. Cmwlth. 2009).

Whether or not Dr. Khan reviewed the hospital records, Claimant's Physician reviewed the records, including the initial emergency room records. F.F. 8c. Based on his review of Claimant's history, medical records and his physical examinations, Claimant's Physician opined Claimant suffered a hypoxia induced movement disorder causally related to the work incident. See R.R. at 197a-99a; F.F. No. 8d. Given these circumstances, any inaccuracies in Dr. Khan's report do not

18

render incompetent Claimant's Physician's opinions regarding Claimant's work injury. Newcomer; Calex.

### d. Employer's witnesses; Claimant's last days of work

Employer further contends the WCJ erred by incorrectly characterizing the testimony of its fact witnesses, Coworker Rossetti and Claim Manager, and by failing to consider wage records showing Claimant worked two days after the work incident without any difficulties.

To begin, we note that a WCJ need not address every detail of the evidence in rendering a decision. Amandeo v. Workers' Comp. Appeal Bd. (Conagra Foods), 37 A.3d 72 (Pa. Cmwlth. 2012). Here, the WCJ accepted Claimant's testimony as more credible than that of Coworker Rossetti regarding the date of the injury and the fact that he was inside an inflated tube. F.F. No. 20. Claimant further testified he attempted to submit an injury report to Insituform the day of the incident, but the plant manager would not take a report and told him to contact Employer. F.F. No. 7c. This finding is supported by Claimant's testimony. See R.R. at 38a-39a.

The WCJ also found that Claimant's pay stubs and work history show that he worked full eight-hour days each day from April 11 through April 22, 2013. F.F. No. 18. To that end, the WCJ awarded Claimant partial benefits for April 20-22, 2013, and total disability benefits beginning April 23, 2013. C.L. No. 2. In this way, the WCJ acknowledged that Insituform's records show that Claimant worked two eight-hour days after the work incident.

19

Although the tube collapse occurred on April 20, and Claimant worked for two more days, Claimant's Physician testified that symptoms causally related to a hypoxic event can be progressive with a delayed onset. See R.R. 207a-12a. The WCJ accepted Claimant's Physician's testimony and opinions as fact. F.F. No. 22. In short, Claimant's Physician never recanted his opinion. Therefore, we reject Employer's contention on this issue. Amandeo.

## B. OSHA Report

### 1. Argument

Employer next contends the WCJ abused his discretion by not allowing Employer to introduce into evidence an OSHA report on air quality and by not allowing Employer additional time to present arguments regarding the admissibility of the OSHA report under the official records exception in 42 Pa. C.S. §§6103-04.

At a hearing before the WCJ in April 2015, Employer attempted to introduce into evidence an investigative report, prepared by an OSHA air quality hygienist, regarding the air quality in all areas of Insituform's facility, including the tube. See R.R. at 119a. Claimant's counsel objected on the basis that the report was hearsay. Id. at 120a. Following argument by counsel as to whether the report was admissible under the business records exception to hearsay, the WCJ sustained Claimant's objection and did not allow the report into evidence. Id. at 122a.

Nonetheless, the WCJ afforded Employer an opportunity to depose an OSHA representative within 30 days of May 15, 2015. Id. at 148a-49a. Employer,

20

however, failed to do so. On appeal here, Employer contends it attempted to subpoena the records, but received two letters from OSHA stating that OSHA investigators are prohibited from testifying in civil litigation without permission of the Deputy Solicitor of the U.S. Department of Labor. See Pet'r's Br. at 41-42. Instead, OSHA advised Employer to request the OSHA investigative file through the Freedom of Information Act (FOIA), 5 U.S.C. §552. Employer, however, previously obtained the OSHA report from Claimant, who obtained it in a FOIA request.

## 2. Analysis

Admission of evidence is committed to the sound discretion of the WCJ. Atkins v. Workers' Comp. Appeal Bd. (Stapley v. Germantown), 735 A.2d 196 (Pa. Cmwlth. 1999). An abuse of discretion occurs where the WCJ's judgment is manifestly unreasonable, the law is misapplied or the record shows the WCJ's action is the result of partiality, bias or ill-will. Allegis Grp. & Broadshire v. Workers' Comp. Appeal Bd. (Coughenaur), 7 A.3d 325 (Pa. Cmwlth. 2010).

Here, Employer's Claim Manager attempted to introduce an OSHA investigative report which purportedly did not show any harmful chemical levels in the workplace or in the tube. R.R. at 119a-20a. Following the report, OSHA did not cite Employer for any violations. Id. at 122a.

Claimant objected to the report on hearsay grounds. Employer claimed the report was admissible as a business record. Id. at 120a. Claimant argued that Claim Manager had nothing to do with the OSHA investigative report other than

21

receiving it. Id. Rather, Claimant argued OSHA conducted the investigation and prepared the report, which discussed "air quality on such and such date and such and such a tube …." Id. at 121a. The WCJ sustained Claimant's objection. Id. at 122a.

Subsection (b) of the Uniform Business Records as Evidence Act provides (with emphasis added):

> **(b) General rule.**—A record of an act, condition or event shall, insofar as relevant, be competent evidence if the custodian or other qualified witness testifies as to its identity and the mode of its preparation, and if it was made in the regular course of business at or near the time of the act, condition or event, and <u>if, in the opinion of the tribunal, the sources of the information, method and time of preparation were such as to justify its admission</u>.

42 Pa. C.S. §6108(b). Normally, whether a document should be admitted under the business records exception to the hearsay rule falls within the WCJ's discretion. <u>Virgo v. Workers' Comp. Appeal Bd. (Cty. of Lehigh Cedarbrook)</u>, 890 A.2d 13 (Pa. Cmwlth. 2005).

Under this exception, it is not essential to produce either the person who made the entries or the custodian of the record at the time the entries were made. Id. It is also not essential that the witness qualifying the business record has personal knowledge of the facts reported in the business record. Id. Rather, as long as the authenticating witness can provide sufficient information regarding the preparation and maintenance of the records to justify a presumption of trustworthiness of the entity's business records, such is sufficient to offset the hearsay character of the evidence. Id. However, if a record <u>is in the nature of an expert opinion or diagnosis,</u>

22

the record's conclusions or impressions are not admissible as a business record unless the person who rendered the opinion is available for cross-examination. Id.

Claim Manager testified OSHA Representative Eileen Hoisen (OSHA Representative) performed the air quality check to determine whether there were any harmful chemical levels in the workplace. R.R. at 120a. Any conclusions or impressions as to the air quality by OSHA Representative, who was not available for cross-examination, would be inadmissible under 42 Pa. C.S. §6108(b). Virgo.

Further, had Employer raised this issue before the WCJ, we believe the OSHA report also would have been inadmissible under the official records exception in 42 Pa. C.S. §§6103-04. See First Ward Republican Club of Phila. v. Pa. Liquor Control Bd., 11 A.3d 38 (Pa. Cmwlth. 2010) (absent an authenticating witness who can provide sufficient information relating to the preparation and maintenance of the record, the record is inadmissible under the official records exception). Here, OSHA Representative, not Claim Manager, prepared the investigate report and conclusions. In any event, because OSHA Representative was not available for cross-examination as to her findings and conclusions as to the quality of the air in the workplace, we see no error in the WCJ's determination to not admit the OSHA report into evidence. Virgo.

## C. Reasoned Decision
### 1. Argument

Employer further contends the WCJ failed to comply with the reasoned decision requirement in Section 422(a) of the Act. Employer asserts the WCJ's

decision was not reasoned because it is not based on the record as a whole. In particular, Employer again argues the WCJ failed to review exculpatory evidence including Dr. Shipkin's IME report, medical records and reports from Dr. Nathanson, and hospital records which provided a contrary history to that provided by Claimant. Employer again asserts the WCJ failed to consider that Claimant worked two days after the incident. In short, Employer contends the WCJ's failure to review this exculpatory evidence violated the reasoned decision requirement of the Act.

## 2. Analysis

Section 422(a) requires the WCJ to issue a "reasoned decision containing findings of fact and conclusions of law based upon the evidence as a whole which clearly and concisely states and explains the rationale for the decisions ...." 77 P.S. §834. A decision is "reasoned" if it allows for adequate appellate review. Daniels v. Workers' Comp. Appeal Bd. (Tristate Transp.), 828 A.2d 1043 (Pa. 2003); Dorsey v. Workers' Comp. Appeal Bd. (Crossing Constr. Co.), 893 A.2d 191 (Pa. Cmwlth. 2006).

Where medical experts testify by deposition, a WCJ's resolution of conflicting evidence must be supported by more than a statement that one expert is deemed more credible than another. Dorsey. The WCJ must articulate an actual objective basis for the credibility determination for the decision to be "reasoned." Daniels; Dorsey. As the Daniels Court explained:

> [T]here are countless objective factors which may support the decision to accept certain evidence while 'rejecting or discrediting competent [conflicting] evidence.' For

24

> example, an expert witness's opinion may be based upon erroneous factual assumptions ... or an expert may have had less interaction with the subject ... or the interaction was in a less timely fashion ... or the expert may betray a bias or interest in the matter. ... In addition, an expert witness may be unqualified or less qualified than the opposing party's expert; or may be impeached with inconsistencies or contradictions in his or her testimony or reports; or may be impeached in some other convincing fashion.

Id. at 1053 (citations omitted).

Here, Employer's reasoned decision argument essentially restates its earlier argument that the WCJ improperly disregarded medical evidence corroborating IME Physician's opinion. In our prior discussion rejecting these arguments, we recognized that the WCJ as fact-finder may accept or reject the testimony of any witness, including an expert witness, in whole or in part. A & J Builders. Also, it is irrelevant whether the record contains evidence to support findings other than those made by the WCJ; the critical inquiry is whether there is evidence to support the findings actually made. Furnari. Having determined the WCJ did not err by declining to more favorably weigh Employer's medical evidence, we need not revisit these arguments under the guise of a reasoned decision challenge.

Regardless, applying a standard reasoned decision analysis, we note the WCJ accepted Claimant's Physician's opinion as more credible than Employer's contradictory medical evidence. F.F. No. 22. In particular, the WCJ noted that he found Claimant's Physician's testimony more persuasive than that of IME Physician, who examined Claimant on only one occasion for purposes of an IME. Id.

25

Further, the WCJ found Claimant's testimony during the hearings credible as to the fact he sustained a work injury as a result of being trapped in a tube collapse during the course of his employment located at Insituform. See F.F. Nos. 20, 21, 23. To that end, the WCJ found Claimant's testimony regarding the incident more credible than that of Coworker Rossetti or Claim Manager. F.F. Nos. 20, 21. In making these findings, the WCJ noted that he observed Claimant and viewed his demeanor throughout the proceedings. F.F. No. 20.

Based on our review of the WCJ's decision and the record, we conclude that the WCJ's findings and credibility determinations are supported by substantial evidence and satisfy the reasoned decision requirement in Section 422(a) of the Act. Daniels; Dorsey.

For the above reasons, we discern no error or abuse of discretion in the WCJ's decision granting Claimant's claims against Employer for total disability and specific loss benefits for the work injuries he sustained as a result of being trapped in a tube collapse during the course of his assigned employment at Insituform. Therefore, we affirm the Board's order.

ROBERT SIMPSON, Judge

26

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Labor Ready Northeast, Inc. and     :
ESIS,     :
          Petitioners    :
     :
     v.     :   No. 486 C.D. 2017
     :
Workers' Compensation Appeal     :
Board (Lasky),     :
          Respondent   :

# **O R D E R**

**AND NOW**, this 22nd day of February, 2018, for the reasons stated in the foregoing opinion, the order of the Workers' Compensation Appeal Board is **AFFIRMED**.

---

ROBERT SIMPSON, Judge