IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Heriberto Medina,                           :
                    Petitioner               :
                                             :       No.  517 C.D. 2018
            v.                               :
                                             :       Submitted:  October 12, 2018
Workers' Compensation Appeal                :
Board (UPS Ground Freight, Inc. and         :
Liberty Mutual Insurance Company),          :
                    Respondents              :


BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge
           HONORABLE PATRICIA A. McCULLOUGH, Judge
           HONORABLE CHRISTINE FIZZANO CANNON, Judge


*OPINION NOT REPORTED*

MEMORANDUM OPINION
BY JUDGE McCULLOUGH                          FILED:  December 17, 2018


            Heriberto Medina (Claimant) petitions for review from the March 15,
2018 order of the Workers' Compensation Appeal Board (Board) affirming the
decision of a workers' compensation judge (WCJ), which partially granted Claimant's
review petition and also granted the termination petition of UPS Ground Freight, Inc.
(Employer).[1]

            Claimant was employed with Employer as a dock worker.  As part of his
job duties, he used a forklift to load and unload trailers and lifted packages.  On

_____

            [1] Claimant also filed a second review petition alleging that his average weekly wage was
incorrect because Employer failed to include concurrent earnings in the form of unemployment
compensation benefits.  The WCJ denied this review petition, and Claimant did not challenge the
ruling before the Board and does not do so before this Court.

February 18, 2015, Claimant was injured while operating a forklift and unloading a trailer when the trailer slid on ice and the forklift fell off the trailer. On March 4, 2015, Employer issued a Notice of Temporary Compensation Payable (NTCP), accepting and describing the work injury as a neck, thoracic, and lumbar sprain/strain. The NTCP subsequently converted to a Notice of Compensation Payable (NCP) on May 1, 2015. (WCJ's Findings of Fact (F.F.) Nos. 1, 3.)

On August 20, 2015, Employer filed a petition to terminate benefits, alleging that Claimant had fully recovered from his work injury. Claimant filed an answer denying the material allegations. On February 12, 2016, Claimant filed a review petition, alleging that the description of his work injury was incorrect and seeking to amend the NCP to include lumbar disc pathology, intermittent lumbar radiculopathy, and coccyx injuries. Employer filed an answer denying the material allegations and asserting that the description of the work injury should not be expanded. The petitions were assigned to a WCJ. (Reproduced Record (R.R.) at 1a-18a.)

Claimant testified by deposition on February 11, 2016, and live at a hearing before the WCJ on August 1, 2016. Claimant stated that he has pain in his lower back and coccyx (tailbone), is treating with a pain management doctor, attends physical therapy two times a week, and takes pain medication. Claimant testified that following the February 18, 2015 accident, he worked for Employer for a couple of days and had to stop due to pain. In his deposition testimony, Claimant indicated that he was in a motor vehicle accident (MVA) in July 2014 and injured his upper back, neck, and banged his head; he denied that he had any prior work injuries or injuries to his lower back or coccyx. During his live testimony, however, Claimant stated that after the 2014 MVA, he treated with a doctor twice and reported, among other things, pain in his lower back. Claimant said that he does not feel that he is capable of returning

2

to work in any capacity, currently uses a cane on a regular basis, and his treating physician has referred him to a surgeon. (F.F. Nos. 2-3.)

Employer submitted medical records from Aria Health, where Claimant was seen following the MVA. At this medical facility, Claimant presented with complaints of pain, including lower back pain, and diagnostic tests were performed on his cervical, thoracic, and lumbosacral spine. (F.F. No. 5; R.R. at 178a-226a.)

Employer also submitted the deposition testimony of Aaron Sporn, M.D., who is board certified in orthopedic surgery. Dr. Sporn met with Claimant on July 17, 2015. He took a history from Claimant and performed a physical examination, which was objectively normal. Dr. Sporn also reviewed relevant medical records, including an MRI of the lumbar spine dated March 5, 2015, which Dr. Sporn opined showed degenerative conditions as opposed to an acute or traumatic injury. Dr. Sporn testified that Claimant has a congenital condition of his tailbone medically termed a Tarlov cyst, stated that the cyst is not related to the work injury, and noted that the cyst can cause pain and is sometimes treated surgically. Ultimately, Dr. Sporn diagnosed Claimant's work injury as sprains, strains, and contusions of the cervical spine, thoracic spine, lumbar spine, coccyx, and left shoulder. In his view, Dr. Sporn stated that the injury was not significant or serious, and he opined that Claimant had fully recovered from the work injury as of July 17, 2015, and could return to his pre-injury job without restrictions. According to Dr. Sporn, Claimant requires no further medical treatment in connection with his work injury. Dr. Sporn obtained correspondence from Med-Eval, particularly an Independent Medical Examantion (IME) Referral Form, which brought it to his attention that Claimant was in a MVA, and Dr. Sporn did not review any medical records with respect to this accident. (F.F. No. 4.)

3

Claimant presented the deposition testimony of Zena Zingerman, M.D., a physiatrist who maintains a physical medicine and rehabilitation practice focusing on pain management. She performed a physical examination of Claimant's lumbar region, which revealed a decreased range of motion to flexion and extension, and a Patrick's test was positive on the left for tenderness over the SI joint and coccyx. Dr. Zingerman then ordered a bone scan, which ruled out a fracture in the sacrum or coccyx. Dr. Zingerman stated that she reviewed research on Tarlov cysts, and learned that they can be preexisting and asymptomatic, but can later become symptomatic when there is trauma. According to Dr. Zingerman, Claimant sustained an aggravation and the Tarlov cyst causes him pain in the coccyx area. She diagnosed Claimant with lumbar strain, aggravation of degenerative disc disease, and coccygeal pain, opined that the conditions were caused by the work injury, and stated that Claimant could not perform his pre-injury job. (F.F. No. 6.)

Dr. Zingerman stated that, although Claimant sustained the above conditions, he had recovered from the neck and mid or upper back injuries that were accepted in the NCP. She conceded that, during her treatment of Claimant, Claimant did not mention the MVA or having had experienced any pain in his coccyx before the work injury. However, Dr. Zingerman noted that medical records from the 2014 MVA documented that Claimant had reported having coccyx pain prior to the automobile accident, which Dr. Zingerman stated had worsened as a result of the accident. Nevertheless, Dr. Zingerman testified that the 2014 MVA and the related medical information did not alter her present expert opinion because the mechanism of the work injury was consistent with Claimant's diagnosed conditions and symptoms. (F.F. No. 6.)

4

At the hearing, Claimant sought to introduce into evidence a May 12, 2016 Utilization Review Determination (URD) pertaining to treatment provided by a doctor. Employer objected to its admission, and the WCJ sustained the objection, finding that the URD constituted hearsay and, further, was not relevant to the issues presented in the termination petition. (F.F. Nos. 9-10.)

The WCJ also reviewed an IME Referral Form from Med-Eval and determined that it did not have any probative value regarding the legal issues presented. (F.F. No. 16.)

In assessing the evidence, the WCJ credited Claimant's testimony, in limited part, specifically finding credible his testimony that he no longer has neck or back problems. The WCJ noted that this portion of Claimant's testimony was corroborated by what he reported to Drs. Sporn and Zingerman. Otherwise, the WCJ rejected the remainder of Claimant's testimony as not credible. In doing so, the WCJ found it significant that Claimant testified inconsistently, by denying in his deposition that he had prior problems with his lower back and tailbone, but later testifying at the hearing that he had received treatment for his lower back before the work injury. The WCJ further pointed out that Claimant did not disclose the MVA and the resulting injuries he sustained to either Dr. Zingerman or Dr. Sporn. (F.F. No. 11.)

The WCJ found the testimony of Dr. Sporn credible and persuasive. The WCJ also credited the Aria Health records showing that Claimant presented with lower back complaints following the June 2014 MVA. (F.F. Nos. 11, 14.)

The WCJ generally credited Dr. Zingerman's opinion that Claimant sustained an injury to his coccyx in the work incident to the extent this testimony was corroborated by, and consistent with, Dr. Sporn's testimony. However, the WCJ rejected Dr. Zingerman's opinions in all other respects, including the nature of

Claimant's injury and the extent of the disability. In making this determination, the WCJ noted, among other things, that "Dr. Zingerman expressed an opinion regarding aggravations of Claimant's pre-existing conditions relating to his low back and coccyx, but did not provide an explanation as to how the mechanism of injury caused the same." (F.F. No. 13.)

Based on these credibility determinations, the WCJ determined that pursuant to Dr. Sporn's testimony, the description of the February 18, 2015 work injury was sprains, strains, and contusions of the cervical spine, thoracic spine, lumbar spine, coccyx, and left shoulder. On this basis, the WCJ granted the review petition, in part, and amended the description of the injury accordingly. The WCJ further determined that Claimant had fully recovered from his work injury as of July 17, 2015, and granted Employer's termination petition. (F.F. Nos. 18-19; Conclusions of Law (COL) Nos. 2-3.)

Claimant appealed, and the Board affirmed.

In his first issue before this Court,[2] Claimant contends that the WCJ failed to issue a reasoned decision under section 422(a) of the Workers' Compensation Act (Act).[3] Although Claimant advances his contentions under the label of the reasoned decision requirement of section 422(a) of the Act, some of his assertions attack the WCJ's credibility determinations and the legal competency of Dr. Sporn's testimony.

Under section 422(a) of the Act, a WCJ must adequately explain the reasons for rejecting or discrediting competent evidence when conflicting evidence is

---

[2] Our scope of review is limited to determining whether findings of fact are supported by substantial evidence, whether an error of law has been committed, or whether constitutional rights have been violated. Section 704 of the Administrative Agency Law, 2 Pa.C.S. §704; *Meadow Lakes Apartments v. Workers' Compensation Appeal Board (Spencer)*, 894 A.2d 214, 216 n.3 (Pa. Cmwlth. 2006).

[3] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §834.

6

presented. *Daniels v. Workers' Compensation Appeal Board (Tristate Transport)*, 828 A.2d 1043, 1047 (Pa. 2003). Section 422(a), however, only requires a WCJ to issue a reasoned decision "so that this Court does not have to 'imagine' the reasons why a WCJ finds that the conflicting testimony of one witness was more credible than the testimony of another witness." *Amandeo v. Workers' Compensation Appeal Board (Conagra Foods)*, 37 A.3d 72, 76 (Pa. Cmwlth. 2012). Pursuant to section 422(a), a WCJ must articulate an actual objective basis for a credibility determination, in order for the decision to be a reasoned one which facilitates effective appellate review, and there are countless objective factors which may support a WCJ's credibility determinations. *Dorsey v. Workers' Compensation Appeal Board (Crossing Construction Co.)*, 893 A.2d 191, 194-95 (Pa. Cmwlth. 2006).

As the ultimate fact-finder, the WCJ has exclusive province over questions of credibility and evidentiary weight, and is free to accept or reject the testimony of any witness, including a medical witness, in whole or in part. *Verizon Pennsylvania, Inc. v. Workers' Compensation Appeal Board (Mills)*, 116 A.3d 1157, 1161 (Pa. Cmwlth. 2015). A court may overturn a credibility determination only if it is arbitrary and capricious or so fundamentally dependent on a misapprehension of facts, or so otherwise flawed, as to render it irrational. *Id.*

First, Claimant argues that Dr. Sporn's testimony was not competent because he did not agree "with the WCJ's eventual ruling on the [r]eview [p]etition that coccydynia from the Tarlov cyst, though extant, was caused by the work accident" and that Dr. Sporn "would not concede" coccydynia as part of the accepted work injury. (Claimant's brief at 10.)

However, Claimant's argument mischaracterizes Dr. Sporn's testimony and the WCJ's findings of fact. Here, the WCJ granted the review petition, in part, and

7

added a contusion to the coccyx pursuant to Dr. Sporn's own testimony. (F.F. No. 18; Conclusion of Law (COL) No. 3). In his deposition, Dr. Sporn testified that a contusion to the coccyx was a work-related injury, (R.R. at 274a-75a), and, based upon this credited testimony, the WCJ amended the description of the injury to include this condition.[4] As such, not only did Dr. Sporn acknowledge an injury to the coccyx as being work-related, but his testimony was legally competent and served as the basis for the injury being included in the description of Claimant's work-related injury.

Further, Dr. Sporn provided unequivocal medical testimony that Claimant had recovered from his work-related injury, including the contusion to the coccyx, and this testimony is sufficient to support a termination of benefits.[5] *See O'Neill v. Workers' Compensation Appeal Board (News Corp. Ltd.)*, 29 A.3d 50, 53 (Pa. Cmwlth. 2011) (stating that "the expert's opinion is competent if he assumes the presence of a previously accepted work-related injury and finds it to be resolved by the time of his examination."). Although Claimant argues that the accepted work injury should have been an aggravation to the coccyx and the Tarlov cyst, consistent with Dr. Zingerman's

---

[4] Under Section 413(a) of the Act, 77 P.S. §771, a WCJ may amend an NCP at any time during litigation of any petition if the evidence shows that the injury sustained in the original work incident is different or more expansive than that listed in the NCP. *Cinram Manufacturing, Inc. v. Workers' Compensation Appeal Board (Hill)*, 975 A.2d 577, 580-81 (Pa. 2009).

[5] In order to secure a termination of benefits, an employer "must prove that a claimant's disability has ceased, or that any existing injury is not the result of the work-related injury. An employer may satisfy this burden by presenting unequivocal and competent medical evidence of the claimant's full recovery from the work-related injury." *O'Neill*, 29 A.3d at 53 (citations omitted). Where a claimant complains of continued pain, the burden in a termination petition is met when "an employer's medical expert unequivocally testifies that it is his opinion, within a reasonable degree of medical certainty, that the claimant is fully recovered, can return to work without restrictions and that there are no objective medical findings which substantiate the claims of pain or connect them to the work injury." *Udvari v. Workmen's Compensation Appeal Board (USAir, Inc.)*, 705 A.2d 1290, 1293 (Pa. 1997); *Marks v. Workers' Compensation Appeal Board (Dana Corp.)*, 898 A.2d 689, 693 (Pa. Cmwlth. 2006).

opinion, the WCJ rejected Dr. Zingerman's testimony as not credible. (F.F. No. 13.) In advancing his contention, Claimant overlooks the fact that the WCJ found that he did not sustain a work-related injury in the form of an aggravation to the coccyx and Tarlov cyst, which is a necessary showing in order for Claimant to add new injuries in a review petition proceeding. *See Cinram Manufacturing*, 975 A.2d at 582 (stating that "the burden rests with claimants to establish the existence of additional compensable injuries."). Therefore, because these conditions were not part of the accepted work-injury, Dr. Sporn did not have to testify that Claimant had fully recovered from them.

Next, Claimant asserts that Dr. Sporn did not offer adequate testimony that Claimant is capable of resuming his pre-injury job or its duties. To the contrary, Dr. Sporn testified that Claimant had fully recovered from all the conditions comprising his work-related injury, could return to his pre-injury position without restrictions, and did not require any further medical treatment in relation to his work-related injury. (R.R. at 282a-83a.) Claimant contends that Dr. Sporn did not know what all Claimant's job duties entailed and failed to review necessary medical records. However, Dr. Sporn testified that Claimant was a dock worker who used a forklift and stated that he reviewed a job description for a dock worker possession that required a commercial driver's license. (R.R. at 264a, 267a, 285a, 287a-88a, 312a.) Although Dr. Sporn may not have reviewed each and every one of Claimant's medical records, particularly those with respect to the MVA, he "reviewed [the] relevant medical records." (F.F. No. 4.) Claimant makes no assertion that the medical records upon which Dr. Sporn relied were inaccurate or false. Consequently, Claimant raises issues that pertain to the weight of the evidence, which is a matter that belongs to the exclusive province of the WCJ as fact-finder. *See Calex, Inc. v. Workers' Compensation Appeal Board (Vantaggi)*, 968 A.2d 822, 827 (Pa. Cmwlth. 2009) ("[T]he fact that a medical expert does not have all

of a claimant's medical records goes to the weight given the expert's testimony, not its competency."); *DeGraw v. Workers' Compensation Appeal Board (Redner's Warehouse Markets, Inc.)*, 926 A.2d 997, 1001-02 & n.4 (Pa. Cmwlth. 2007) (stating that, although the medical expert admitted that he did not review a job description for the claimant's position, the expert testified that he knew the claimant was a produce worker and that the injury occurred while lifting produce; therefore, the issue affected the weight to be accorded to the doctor's testimony, not its competency).

Next, Claimant contends that in Finding of Fact No. 13, the WCJ utilized an unlawful and incorrect basis to discredit Dr. Zingerman's testimony "regarding aggravations of Claimant's pre-existing conditions relating to his low back and coccyx" because she "did not provide an explanation as to how the mechanism of injury caused the same." (F.F. No. 13.) Claimant asserts that Dr. Zingerman provided such an explanation by relating it to the fall he sustained on February 18, 2015.

Here, Dr. Zingerman opined that Claimant suffered from, among other conditions, "aggravation of degenerative disc disease" and "coccygeal pain." (R.R. at 130a.) However, she only testified that these conditions arose from "a severe fall," where Claimant had a "shock to his low back," and baldly stated that she was basing her aggravation diagnosis "because . . . the mechanism of the injury . . . can aggravate [Claimant's] preexisting conditions." (R.R. at 130a, 136a.) From the WCJ's perspective, this testimony did not demonstrate, in an adequate fashion with explicit medical detail, the state of Claimant's preexisting condition or explain how that condition was specifically aggravated and worsened as a result of the accident. Instead, the testimony cursorily mentioned the "mechanism of the injury," but did not elaborate further, and Dr. Zingerman failed to describe the precise manner in which the impact from the accident had a consequential effect on the preexisting condition.

10

On this record, we conclude that the WCJ, as fact-finder, did not err or abuse her discretion in characterizing the deficiency in Dr. Zingerman's testimony the way she did, and that her finding was a proper basis to question the credibility of Dr. Zingerman's testimony. *See Empire Steel Castings, Inc. v. Workers' Compensation Appeal Board (Cruceta)*, 749 A.2d 1021, 1026-27 (Pa. Cmwlth. 2000) (concluding that a WCJ issued a reasoned decision in rejecting the testimony of an expert where the WCJ found the "testimony regarding the asserted chronic nature of [c]laimant's problems unconvincing" and noted "the absence of any other convincing explanation for [c]laimant's problems"). Moreover, the WCJ found the testimony of Claimant to be not credible due to inconsistencies from his deposition testimony and live testimony regarding prior problems with his lower back and coccyx, and also because Claimant did not disclose the MVA to Dr. Zingerman. (F.F. No. 11.) Besides serving as sufficient grounds to find Claimant's testimony not credible, *see Daniels*, 828 A.2d at 1052-53, these facts also had the effect of undermining the credibility of Dr. Zingerman's testimony in the sense that she did not originally possess a full and complete understanding of the origin and nature of Claimant's injury when she first rendered her diagnosis. (F.F. No. 13.) *See Smith v. Workers' Compensation Appeal Board (HealthSouth of Mechanicsburg, Inc.)* (Pa. Cmwlth., No. 2710 C.D. 2015, filed August 5, 2016) (unreported), slip op. at 11-12 & n.4 (concluding that reasoned decision requirement was met where the WCJ found that the claimant's medical expert did not possess a "thorough and accurate understanding of [c]laimant's medical history.");[6] *see also Daniels*, 828 A.2d at 1053 (stating that, for the reasoned decision requirement, a WCJ may reject an expert witness' opinion where it is "based upon

---

[6] Although *Smith* is an unreported decision, and therefore not binding precedent, this Court considers and cites the case for its persuasive value. *See* Section 414(a) of the Commonwealth Court's Internal Operating Procedures, 210 Pa. Code §69.414(a).

erroneous factual assumptions"). Therefore, we conclude that the WCJ issued a reasoned decision that adequately explains her credibility determinations with respect to the conflict in the experts' testimony and that she did not err in crediting Dr. Sporn as being more persuasive.

In his second issue, Claimant asserts that the WCJ erred in concluding that the IME Referral Form from Med-Eval, dated July 17, 2015, lacked probative value. (*See* R.R. at 308a-13a.) Claimant states that the document is relevant because it provided Dr. Sporn with a history of Claimant's MVA. He argues that this information impacts Dr. Sporn's credibility and competency by demonstrating the doctor's "incomplete comprehension of the MVA injuries and treatment." (Claimant's brief at 17.)

Claimant, however, does not discuss this issue further and fails to cite any specific portion of or language from the IME Referral Form that could be construed as supporting his contentions. Upon our review, we fail to discern how the IME Referral Form could have been used for Claimant's purported purposes. While the IME Referral Form states "the prior history is significant" and notes Dr. Sporn's "understanding that [Claimant] was in a [MVA] on June 7, 2014, with resulting injuries to the neck and back," (R.R. at 312a), the WCJ's dismissal of this evidence for lack of probative value was actually beneficial to Claimant as it only highlighted the MVA and his prior injuries to his lower back. In addition, the substantive content of the IME Referral Form was merely cumulative of other evidence admitted at the hearing concerning the MVA and the injuries that Claimant sustained in that accident. *See Washington v. Workers' Compensation Appeal Board (Pennsylvania State Police)*, 11 A.3d 48, 59 (Pa. Cmwlth. 2011) (stating that a WCJ is permitted to exclude evidence that is merely cumulative).

12

Next, Claimant argues that the WCJ erred in concluding that the URD was inadmissible as irrelevant to the issues in the termination proceeding and for containing hearsay statements. To the contrary, a URD is irrelevant to "the issue of whether the employee is still disabled." *Hoffmaster v. Workers' Compensation Appeal Board (Senco Products, Inc.)*, 721 A.2d 1152, 1155 (Pa. Cmwlth. 1998).

Finally, Claimant asserts that the WCJ failed to rule on the admissibility of records appended to a report of Dr. Zingerman that was submitted into evidence during her deposition. Claimant contends that the WCJ did not adequately consider these records in rendering her decision. However, Claimant did not raise or preserve these issues before the Board and, therefore, they are waived for purposes of this appeal. *See Brewer v. Workers' Compensation Appeal Bd. (EZ Payroll & Staffing Solutions)*, 63 A.3d 843, 849 (Pa. Cmwlth. 2013) ("Failure to raise an issue before the Board results in waiver of the issue upon this Court's review.").

Accordingly, having concluded that Claimant's arguments do not merit relief, we affirm the Board's order affirming the WCJ's partial grant of the review petition and grant of the termination petition filed by Employer.

 

 

 

_____
PATRICIA A. McCULLOUGH, Judge

13

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Heriberto Medina,                :
          Petitioner         :
                            :   No.  517 C.D. 2018
        v.             :
                            :
Workers' Compensation Appeal  :
Board (UPS Ground Freight, Inc. and  :
Liberty Mutual Insurance Company),  :
          Respondents    :

## ***ORDER***

AND NOW, this 17ᵗʰ day of December, 2018, the March 15, 2018 order of the Workers' Compensation Appeal Board is hereby affirmed.

_____
PATRICIA A. McCULLOUGH, Judge