IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Robert Manchester,                          :
                                            :
                        Petitioner          :
                                            :
            v.                              : No. 586 C.D. 2018
                                            : Submitted: August 3, 2018
Workers' Compensation Appeal                :
Board (Lincare Holdings, Inc.),             :
                                            :
                        Respondent          :


BEFORE:    HONORABLE ANNE E. COVEY, Judge
           HONORABLE MICHAEL H. WOJCIK, Judge
           HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WOJCIK                                    FILED:  March 14, 2019


        Robert Manchester (Claimant) petitions for review of the April 10, 2018 order of the Workers' Compensation Appeal Board (Board) affirming the decision of a workers' compensation judge (WCJ) to deny Claimant's reinstatement petition.  We affirm.

        On June 7, 2011, Claimant was injured in the course of his employment as a delivery driver with Lincare Holdings, Inc. (Employer). Employer accepted liability for the injury by way of a notice of compensation payable.  Claimant's benefits were suspended effective October 3, 2011, based on his return to work with no loss of wages.

        On February 2, 2016, Claimant filed a reinstatement petition alleging that, as of November 28, 2015, he had suffered a worsening of his condition related

to the 2011 injury that resulted in a loss of earning power.[1]  Also on February 2, 2016, Claimant filed a claim petition alleging that he suffered a left knee injury on November 25, 2015, in the course of his employment with Consolidated Construction Products, Inc. (Consolidated).  The petitions initially were consolidated for hearings before a WCJ, but the claim petition involving Consolidated was subsequently severed and reassigned to a different WCJ.[2]  Employer filed a timely answer to the reinstatement petition.

In support of his reinstatement petition, Claimant testified before the WCJ at a March 4, 2016 hearing.  Claimant stated that he was making a delivery for Employer on June 7, 2011, when he slipped and landed badly, injuring his left knee.  He was diagnosed with a meniscal tear that was surgically repaired by Jeffrey Kann, M.D., on August 5, 2011.  Claimant testified that he responded well to the surgery and returned to his regular duty job about six weeks later.

Claimant said that he left his job with Employer shortly thereafter because he did not like being on-call every third week.  He worked as a delivery driver for Lowe's from November 2011 through April 2012, and stated that he had no problems with his left knee during that time.

On May 1, 2012, Claimant became employed as a delivery driver with Consolidated.  His job involved loading materials onto a flatbed truck or tractor-

---

[1] In a reinstatement proceeding following a suspension of benefits, the claimant has the burden of proving that his disability is a continuation of the disability that arose from his original claim. *Ingrassia v. Workers' Compensation Appeal Board (Universal Health Services, Inc.)*, 126 A.3d 394, 401 (Pa. Cmwlth. 2015).

[2] The exhibits that Consolidated offered into evidence were not resubmitted as exhibits in this matter.  However, Claimant testified before the WCJ and took the deposition testimony of Dr. Habib while the cases were consolidated and both were cross-examined by counsel for Consolidated.

2

trailer, strapping them down, and then unstrapping the materials at the delivery sites. He used both feet to drive because the truck had a manual transmission. Claimant testified that he was not under a doctor's care and had no problems with his left knee until he was injured while making a delivery on November 25, 2015.

Claimant testified that as he was getting off the trailer his foot slipped and he landed awkwardly on his left foot. He said he immediately began to have pain and swelling in his left knee. The incident occurred the day before Thanksgiving, and Claimant sought medical attention at a Medi-help the day after the holiday. He reported the injury to his supervisor and went to Concentra, where a doctor took x-rays, ordered an MRI, and took him off work for seven days. Claimant testified that he provided information from Concentra to his supervisor and to an employee in Consolidated's Human Resources department. Consolidated denied his workers' compensation claim in December 2015.

On referral of his counsel, Claimant sought treatment with Gregory F. Habib, D.O., on January 4, 2016. Claimant testified that Dr. Habib drained fluid from his knee, injected cortisone, provided a knee brace, and prescribed physical therapy. Claimant stated that he continues to see Dr. Habib for treatment of ongoing pain and swelling. He did not believe he could return to his position with Consolidated or his previous job with Employer.

On cross-examination, Claimant repeated that he was off work for several weeks after the 2011 injury and then returned to his pre-injury job with Employer. He remembered having knee pain on one occasion, on October 26, 2011, adding that he had it checked out at Concentra but did not miss any time from work. Claimant testified that he had no problems with his knee while he was working at Lowe's or at Consolidated, prior to November 25, 2015. Claimant

3

described his left knee pain after the 2015 injury as "pretty much the same" as the symptoms he had after the 2011 injury.

Claimant also offered the August 15, 2016 deposition testimony of Dr. Habib, a board-certified orthopedic surgeon. Dr. Habib testified that he first saw Claimant for an evaluation of left knee pain on January 4, 2016. Claimant informed Dr. Habib of his previous left knee injury in 2011 and the surgery performed by Dr. Kann. Dr. Habib reviewed Claimant's medical records, including Dr. Kann's operative reports, records of treatment at Medi-help, x-rays, and a 2015 MRI. According to Dr. Habib, Dr. Kann's notes indicated a large tear of the meniscocapsular junction of the left knee and an arthroscopic procedure that removed a large section of the medial meniscus. Claimant told Dr. Habib that he did very well after the surgery.

Dr. Habib testified that Claimant presented with pain and swelling of the left knee as well as a decreased range of motion. He drained Claimant's knee, recommended cartilage shots, and treated Claimant with cortisone injections, physical therapy and a brace. Dr. Habib did not release Claimant to return to full duty work. He opined that Claimant ultimately would need surgery, adding that Claimant was a good candidate for a partial knee replacement.

Dr. Habib stated that x-rays taken on January 4, 2016 showed advanced arthritis in Claimant's left knee. He explained that degenerative arthritis takes decades to develop and often afflicts both knees. Dr. Habib emphasized that Dr. Kann's records did not note any arthritis of Claimant's left knee at that time, Reproduced Record (R.R.) at 46a, 56a-57a, and Dr. Habib believed that the advanced arthritis in Claimant's left knee developed after his 2011 injury, over the course of only four years.

4

Dr. Habib testified that his initial diagnosis of Claimant was an injury causing an aggravation of preexisting posterior medial arthritis, which likely was due to the large meniscus tear Claimant suffered in 2011. R.R. at 47a-49a. He imposed work restrictions on Claimant, including no squatting, twisting, or turning of the left knee. He stated that he related Claimant's current restrictions to both the 2011 injury that resulted in advanced arthritis and the more recent injury that caused an aggravation of the arthritis in Claimant's left knee. When specifically asked which injury was more of a substantial contributing factor to Claimant's current work restrictions, Dr. Habib agreed that the 2011 injury was more of a contributing factor. R.R. at 61a.

On cross-examination, Dr. Habib said that Claimant had only a few minor complaints concerning his left knee between his surgery in 2011 and his injury in 2015. Dr. Habib acknowledged a report by Michael Rytel, M.D., who evaluated Claimant at Employer's request on May 26, 2016, and concluded that the lack of treatment from October 2011 to November 2015 supports the fact that Claimant had fully recovered from the June 2011 injury. Dr. Habib also acknowledged that Claimant was not under any restrictions prior to the 2015 injury. He agreed that being asymptomatic for several years after meniscus surgery and being able to resume full duty would indicate a successful surgery. Dr. Habib described the subsequent 2015 injury as "definitely a changing point of this left knee." R.R. at 81a. He repeated his belief that, with Claimant's advanced arthritis, such an occurrence was inevitable. R.R. at 82a.

Employer submitted the deposition testimony of Dr. Rytel. In relevant part, Dr. Rytel testified that Claimant's history reflected he had no problems functioning with his knee for four years prior to the 2015 injury. He

5

explained that the mechanism of the 2015 injury was consistent with a meniscal tear, and he opined that Claimant's present symptoms were due to a meniscal tear resulting from the 2015 injury.

The WCJ credited Dr. Habib's testimony, in part, to find that Claimant developed post-traumatic arthritic changes as a result of the 2011 work injury. Rejecting Dr. Rytel's contrary opinion, the WCJ found that Claimant had not fully recovered from the 2011 injury but continues to "suffer from some effects of that injury." WCJ's Finding of Fact No. 18. However, the WCJ found Dr. Rytel's opinions and Dr. Habib's testimony on cross-examination credible and persuasive to establish that Claimant's current restrictions were related to the 2015 work injury. The WCJ also cited Claimant's ability to perform his physically demanding job as a delivery driver for more than four years after the 2011 injury and surgery. The WCJ explained:

> To the extent that Dr. Habib testified on direct examination that the restrictions on Claimant's ability to return to work are attributable in part to the 2011 injury, I do not find those opinions to be persuasive or credible in part because he then changed his opinion on cross examination wherein he conceded that the current restrictions stem from the 2015 incident. *More importantly, I reject that opinion due to the overwhelming evidence that Claimant was able to work as a delivery driver where he had to use his left leg to operate a clutch, had to get in and out of the cab of his truck a number of times per day, and had to sometimes get onto the bed of his trailer to strap down loads before the 2015 incident. All of this changes after the 2015 incident. To attempt to then attribute the restrictions to the earlier injury is not credible.*

WCJ's Finding of Fact No. 19 (emphasis added). The WCJ concluded that Claimant failed to establish that his current loss of earning power was due to the

6

2011 injury and denied Claimant's reinstatement petition. Claimant appealed to the Board, which affirmed the WCJ's decision.[3]

On appeal to this Court,[4] Claimant argues that the WCJ failed to issue a reasoned decision as required by Section 422(a) of the Workers' Compensation Act (Act)[5] because the WCJ misinterpreted Dr. Habib's testimony. Claimant also contends that Dr. Rytel's testimony was not competent because he did not review all of Claimant's medical records.

---

[3] Employer cross-appealed, arguing that Claimant's reinstatement petition was time-barred. The Board noted that Employer was not aggrieved by the WCJ's decision, which the Board affirmed on appeal.

[4] Our scope of review is limited to determining whether constitutional rights were violated, whether the adjudication is in accordance with the law, or whether necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa. C.S. §704.

[5] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §834. In relevant part it states:

> All parties to an adjudicatory proceeding are entitled to a reasoned decision containing findings of fact and conclusions of law based upon the evidence as a whole which clearly and concisely states and explains the rationale for the decisions so that all can determine why and how a particular result was reached. The workers' compensation judge shall specify the evidence upon which the workers' compensation judge relies and state the reasons for accepting it in conformity with this section. *When faced with conflicting evidence, the workers' compensation judge must adequately explain the reasons for rejecting or discrediting competent evidence.* Uncontroverted evidence may not be rejected for no reason or for an irrational reason; the workers' compensation judge must identify that evidence and explain adequately the reason for its rejection. The adjudication shall provide the basis for meaningful appellate review.

77 P.S. §834 (emphasis added).

7

Claimant first argues that the WCJ erred by misreading Dr. Habib's testimony. Specifically, Claimant maintains that Dr. Habib did not concede that the 2015 injury was the substantial contributing factor to Claimant's disability.[6] According to Claimant, Dr. Habib clearly opined that the 2011 injury resulted in a 100% chance of rapid deterioration of his left knee, such that an aggravation of the preexisting condition, post-traumatic arthritic changes, was inevitable.

However, Dr. Habib acknowledged that Claimant was never disabled from working between 2011 and November 2015 and that the restrictions placed on Claimant, i.e., his loss of earning power, were related to the 2015 incident.[7] Claimant himself credibly testified that he did not have any problems performing his job duties for more than four years after the 2011 injury and surgery. WCJ's Finding of Fact No. 19. The WCJ emphasized that he rejected that portion of Dr. Habib's testimony relating Claimant's disability to the 2011 injury "due to the overwhelming evidence" that Claimant was able to work without restrictions for the four years preceding the 2015 injury. *Id.*

Claimant also asserts that the WCJ erred in relying on Dr. Rytel's testimony because Dr. Rytel admittedly did not review x-rays or medical records subsequent to a December 2015 MRI report. However, there is no requirement that a medical expert review all of a claimant's medical records. *Calex, Inc. v.*

---

[6] In the context of workers' compensation law, "disability" is synonymous with "loss of earning power." *Weissman v. Workers' Compensation Appeal Board (Podiatry Care Center)*, 878 A.2d 953, 958 (Pa. Cmwlth. 2005).

[7] Moreover, it is now well settled that an aggravation of a preexisting condition is deemed a new injury for purposes of workers' compensation law. *South Abington Township v. Workers' Compensation Appeal Board (Becker & ITT Specialty Risk Services)*, 831 A.2d 175, 181 (Pa. Cmwlth. 2003).

*Workers' Compensation Appeal Board (Vantaggi)*, 968 A.2d 822, 827 (Pa. Cmwlth. 2009). The fact that a medical expert does not have all of a claimant's medical records goes to the weight given to the expert's testimony, *id.,* a determination committed to the exclusive authority of the WCJ. *Sherrod v. Workmen's Compensation Appeal Board (Thoroughgood, Inc.)*, 666 A.2d 383, 385 (Pa. Cmwlth. 1995).

It is a fundamental tenet of workers' compensation law that the WCJ has complete authority over questions of credibility, conflicting medical evidence, and evidentiary weight. *Id.* The WCJ may accept or reject the testimony of any witness, including a medical witness, in whole or in part. *Minicozzi v. Workers' Compensation Appeal Board (Industrial Metal Plating, Inc.)*, 873 A.2d 25, 28 (Pa. Cmwlth. 2005). As the ultimate fact-finder, the WCJ's findings are binding on appeal if supported by substantial evidence. *Agresta v. Workers' Compensation Appeal Board (Borough of Mechanicsburg)*, 850 A.2d 890, 893 (Pa. Cmwlth. 2004).

After review, we conclude that the WCJ's decision allows for adequate appellate review and satisfies the reasoned decision requirements of Section 422(a) of the Act. *See Daniels v. Workers' Compensation Appeal Board (Tristate Transport)*, 828 A.2d 1043, 1052 (Pa. 2003) (holding that a decision is "reasoned" for purposes of Section 422(a) if it allows for adequate review by an appellate court under applicable standards of review). We further conclude that the WCJ's findings are supported by substantial evidence, specifically, the testimony of Claimant, Dr. Habib, and Dr. Rytel. Claimant bore the burden of proving that his disability is a continuation of the disability that arose from his 2011 work injury. *Ingrassia v. Workers' Compensation Appeal Board (Universal Health*

9

*Services, Inc.)*, 126 A.3d 394, 401 (Pa. Cmwlth. 2015).  Because the WCJ rejected Dr. Habib's opinion that Claimant's current disability is related to the 2011 injury, Claimant failed to meet his burden of proof.

       Accordingly, we affirm.

 

_____
MICHAEL H. WOJCIK, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Robert Manchester,          :
            :
         Petitioner  :
            :
       v.        : No. 586 C.D. 2018
            :
Workers' Compensation Appeal  :
Board (Lincare Holdings, Inc.),  :
            :
      Respondent :

# O R D E R

AND NOW, this 14th day of March, 2019, the order of the Workers' Compensation Appeal Board, dated April 10, 2018, is AFFIRMED.

_____
MICHAEL H. WOJCIK, Judge